[Cite as *State v. Azeen*, 2019-Ohio-4677.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO, :

    Plaintiff-Appellant, :

                                 No. 108072

    v. :

ABDUL S. AZEEN, :

    Defendant-Appellee. :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 14, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-16-603690-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Katherine Mullin, Assistant Prosecuting Attorney, *for appellant.*

Mark A. Stanton, Cuyahoga County Public Defender, and Erika B. Cunliffe, Assistant Public Defender, *for appellee.*

LARRY A. JONES, SR., P.J.:

{¶ 1} In this appeal brought by plaintiff-appellant, the state of Ohio ("the State"), we are called on to determine whether the trial court erred in dismissing an

aggravated murder indictment against defendant-appellee Abdul Azeen ("Azeen"). For the reasons that follow, we affirm.

Procedural and Factual History

{¶ 2} The incident giving rise to this case occurred in February 1987.[1] Azeen shot two brothers, Danuell and Herman Jackson. Danuell was shot in the neck and was rendered paralyzed from the waist down. Herman was shot in the groin area; his injuries were not life threating.

{¶ 3} In July 1987, Azeen was charged with attempted murder of Danuell and felonious assault of Herman; both charges contained firearm specifications. He was also charged with having weapons while under disability. He initially pleaded not guilty and counsel was assigned to represent him.

{¶ 4} On September 1, 1987, Azeen withdrew his previously entered not guilty plea and entered a no contest plea to the indictment. The trial court found Azeen guilty of the charges and immediately proceeded to sentencing. The court sentenced Azeen to a total mandatory three-year term for the firearm specifications, and an indeterminate sentence between five and 25 years on the attempted murder, to be served concurrently with the sentences on the felonious assault and having weapons while under disability charges. The sentence was the minimum sentence Azeen could have received under the sentencing laws at the time. Azeen was paroled in December 1995.

---

[1]At the time, Azeen went by the name Lloyd Harris.

{¶ 5} In May 2014, Danuell Jackson passed away. The medical examiner's autopsy report determined the cause of death to be from complications from an ulcer on Danuell's leg and pelvis. According to the medical examiner, the conditions were caused by Danuell's paraplegia that resulted from the shooting. The medical examiner found the manner of death to be homicide.

{¶ 6} On October 27, 2016, the state filed the within indictment against Azeen for the aggravated murder of Danuell. Azeen filed a motion to dismiss the indictment with prejudice on the ground that the finality of the proceeding had been negotiated through his no contest plea. The state opposed the motion, contending that there was no negotiated plea and, therefore, there was no bar to the within indictment. After a hearing on the motion, the trial court agreed with the defense and granted the motion to dismiss. The state presents the following sole assignment of error for our review:

> The trial court erred when it dismissed Abdul Azeen's aggravated murder indictment under *State v. Dye*, 127 Ohio St.3d 357, as that case is inapplicable and distinguishable because Azeen did not enter a negotiated guilty plea.

{¶ 7} Further facts will be developed below.

Law and Analysis

{¶ 8} Review of a trial court's ruling on a pretrial motion to dismiss involves a mixed question of law and fact. *State v. Barnes*, 8th Dist. Cuyahoga No. 90847, 2008-Ohio-5472, ¶ 17. We accept the facts as found by the trial court if supported by some competent, credible evidence, but independently review the court's legal

conclusions. *Id.* "Thus, under this standard, a reviewing court should apply a de novo standard of review to the legal issues but afford great deference to any findings of fact made by the trial court." *Id.*

{¶ 9} In this appeal, the State mainly contends that the trial court erred in dismissing the indictment because the "reservation of rights" requirement set forth in *State v. Carpenter*, 68 Ohio St.3d 59, 623 N.E.2d 66 (1993), is not a constitutional right, and there was no competent, credible evidence that Azeen's plea was a "negotiated guilty plea" within the meaning of *Carpenter* and *State v. Dye*, 127 Ohio St.3d 357, 2010-Ohio-5728, 939 N.E.2d 1217.

{¶ 10} *Carpenter* and *Dye* are instructive on the issue of whether the state can bring a murder indictment against a defendant for the death of a victim after the defendant previously pleaded guilty for the injuries the victim sustained because of the defendant.

{¶ 11} In *Carpenter*, the defendant was indicted on a felonious assault charge related to him stabbing the victim. In 1985, after plea negotiations with the state, the defendant pleaded guilty to the lesser included offense of attempted felonious assault. The state agreed to a recommended minimum sentence of two to ten years. At the time of the plea, the state was aware that the victim was in critical condition and would probably die as a result of the stabbing. However, the plea agreement did not contain any reference to the state seeking additional prosecution against the defendant if the victim died. The trial court sentenced the defendant to the recommended sentence.

{¶ 12} In 1986, the victim died. Around September 1987, the defendant was released from prison, and in January 1988, he was charged with the murder of the victim. On appeal to the Ohio Supreme Court, the issue was framed as follows: "When the state accepts a negotiated plea, and the victim later dies of injuries sustained in the crime, can the defendant later be indicted for murder where the state does not expressly reserve the right of the state to file additional charges, should the victim later die?" *Carpenter*, 68 Ohio St.3d at 60-61, 623 N.E.2d 66. The court answered "no." *Id.* at 61.

{¶ 13} The court reasoned that, despite the state's knowledge of the victim's condition at the time of the plea, it accepted the plea and recommended the sentence. "By accepting a plea to a lesser included charge, the state obtained a definite prison term for the defendant and avoided the uncertainties of trial." *Id.* In regard to the defendant, the court reasoned that "[i]n exchange, [he] anticipated that by pleading guilty to attempted felonious assault, and giving up rights which may have resulted in his acquittal, he was terminating the incident and could not be called on to account further on any charges regarding this incident." *Id.* at 61-62.

{¶ 14} In *Dye*, 127 Ohio St.3d 357, 2010-Ohio-5728, 939 N.E.2d 1217, in 1999, the defendant was driving under the influence, and under suspension, when he struck a 13-year-old boy, rendering him a quadriplegic. The defendant was indicted on one count of aggravated vehicular assault, with three specifications, and one count of driving under the influence of alcohol. The defendant entered into a plea agreement with the state, whereby he pleaded guilty to aggravated vehicular

assault and one of the specifications (i.e., driving under the influence of alcohol), and the second count of the indictment, driving under the influence of alcohol. As a result of the defendant's plea, the other two specifications attendant to the aggravated vehicular assault charge were dismissed. The state did not reserve the right to reindict the defendant should the victim die from the injuries.

{¶ 15} The trial court sentenced the defendant to the maximum prison term for each count, to be served concurrently, for a total term of 18 months. In June 2001, the defendant was released after having served his full sentence.

{¶ 16} In December 2006, the victim died from complications due to his injuries, and the state charged the defendant with aggravated vehicular homicide. The defendant filed a motion to dismiss on the authority of *Carpenter*. The defendant contended that his 1999 plea was a "negotiated guilty plea" as intended by *Carpenter*; therefore, the state was barred from further prosecuting him.

{¶ 17} On appeal to the Ohio Supreme Court, the court gave a more in-depth rationale for its decision in *Carpenter*:

> The basis for the rule announced in *Carpenter* was the application of contract law to the construction of the plea agreement: "The holding in *Carpenter* is essentially a synthesis of contract and criminal law in a particular factual setting. Its supporting analysis is ultimately derived from the proposition that plea agreements are a necessary and desirable part of the administration of criminal justice, and, therefore, "'must be attended by safeguards to insure the defendant what is reasonably due in the circumstances.'" *Id.*, 68 Ohio St.3d at 61, 623 N.E.2d 66, quoting *Santobello v. New York* (1971), 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427."

*Dye*, 127 Ohio St.3d 357, 2010-Ohio-5728, 939 N.E.2d 1217, at ¶ 20, quoting *State v. Zima*, 102 Ohio St.3d 61, 2004-Ohio-1807, 806 N.E.2d 542, ¶ 11.

{¶ 18} The court explained that its "concern in *Carpenter* was to avoid the breaking of promises made by the prosecutor in the original plea agreement." *Dye* at ¶ 22. Thus, "[i]n order for a guilty plea to be a 'negotiated guilty plea' within the meaning of *State v. Carpenter*, the record must show the existence of the elements of a contract (the plea agreement)." *Dye* at ¶ 23.

{¶ 19} In this case, the State contends that a no contest plea can never be negotiated; that is, when a defendant enters a no contest plea, the state has not reduced the charges, has not promised a sentence, and has not induced the defendant to enter the plea. Therefore, according to the State, in a situation where a defendant enters a no contest plea, the state has no agreement with the defendant. We disagree with that contention generally and specifically as it applies to this case.

{¶ 20} Generally, no contest pleas can be negotiated. For example, in *State v. Luna*, 2 Ohio St.3d 57, 442 N.E.2d 1284 (1982), the defendant was charged with four counts of drug trafficking. He filed a motion to dismiss the indictment on the ground of a violation of speedy trial rights; the trial court denied the motion. The defendant pleaded not guilty and entered into plea negotiations with the state. He ultimately pleaded no contest to one lesser included offense and the trial court found him guilty.

{¶ 21} The defendant appealed, contending that his speedy trial rights had been violated. The appellate court rejected the defendant's argument, however,

finding that he waived his right to appeal by entering a no contest plea. The defendant filed a supplement to the record; the supplement was a stipulation that the state knew he intended to appeal the speedy trial issue. Based on the supplement to the record, the defendant filed a motion for reconsideration in the appellate court, which was denied.

{¶ 22} The case went to the Ohio Supreme Court for consideration of "whether a plea of no contest pursuant to a negotiated plea agreement constitutes a waiver of a defendant's right * * * to appeal trial court rulings on pretrial motions." *Id.* Although the issue in *Luna* is different from the issue here, the following holding from the Ohio Supreme Court is instructive:

> The language of Crim.R. 12[(I)] supports appellant in that the rule specifically states that "[t]he plea of no contest does not preclude a defendant from asserting upon appeal that the trial court prejudicially erred in ruling on a pretrial motion * * *." Nowhere in the rule or elsewhere is there a distinction made between *negotiated pleas of no contest and non-negotiated no contest pleas.* Nevertheless, the court below created this distinction, apparently on its own authority.
>
> * * *
>
> On reconsideration the [appellate] court stated that the record "does not reflect any agreement by the State that the defendant would have the right to appeal * * * but merely reflects the defendant's intention to do so * * *." The court of appeals seemed to presume waiver in the context of *negotiated no contest pleas* while the import of Crim.R. 12[(I)] is to preserve, not waive, the right to appeal pretrial rulings. The court in effect renegotiated the agreement between appellant and the prosecutor's office, which agreement had been accepted by the trial court. This was error.

(Emphasis added.) *Id.* at 57-58.

{¶ 23} In light of the above, the State's position that no contest pleas can never be negotiated is not correct. Furthermore, for the reason discussed below, we agree with Azeen that the record in this case demonstrates that his no contest plea was negotiated.

{¶ 24} The parties provided the trial court with a transcript from Azeen's 1987 no contest plea at the hearing on his motion to dismiss in this case, and the following facts were established. At the opening of the plea hearing, the trial court told Azeen "when you plead no contest, you can expect to receive this sentence: Three years for the firearm specification, and then the 5 to 25 indeterminate for the attempted murder. The other offenses are concurrent." Thereafter, Azeen pleaded no contest to the charges, and the assistant prosecuting attorney recited the factual basis for them. Both victims and their mothers were present, and the victims addressed the court. In response to the victims, the court stated that it wished it "could put you back in the physical condition you were in before, but I can't. Everybody here, this man [Azeen] is going to the penitentiary. That is what the system provides for, but I can't give you back your health. I would like to, but I can't."

{¶ 25} The trial court then found Azeen guilty of the charges, and imposed the previously indicated sentence, which, as mentioned, was the minimum sentence Azeen could have received at the time. After the court sentenced Azeen, the assistant prosecuting attorney asked the court to confirm that the sentences on the underlying offenses were to be served concurrently. The trial court confirmed that was correct,

and the assistant prosecuting attorney thanked the court. The assistant prosecutor never objected to the minimum sentence.

{¶ 26} At the hearing on the motion to dismiss in this case, Azeen's counsel informed the court that the attorney who represented Azeen for the no contest plea (the attorney had recently passed away) had been a seasoned criminal defense attorney who fought hard for his clients:

> And if you told me 50 other [criminal defense attorney] names, I might say they walked their guy up to the podium with no expectation of what was going to happen. But there's no way [Azeen's original attorney] walked into a courtroom without knowing his client was going to get the minimum and [plead] no contest.

{¶ 27} Based on this record, defense counsel in this case contended that the negotiation occurred off the record, in chambers; we agree. Had there not been off-the-record negotiations and an agreement on the sentence, the trial judge would not have stated Azeen's sentence as the first course of business at the change-of-plea hearing. Further, after the plea was taken, the court proceeded immediately to sentencing, evidencing that there was no need for a presentence investigation or for the court to ponder what sentence it was going to impose — that had already been negotiated.

{¶ 28} The State contends that there was no consideration for Azeen's no contest plea and, therefore, it was not negotiated. The record belies that contention. As mentioned, Azeen gave up his constitutional right to a trial in exchange for a minimum, concurrent sentence, and the State gained the benefit of getting a

conviction without having to go to trial. *See Dye*, 127 Ohio St.3d 357, 2010-Ohio-5728, 939 N.E.2d 1217, at ¶ 25.

{¶ 29} Moreover, despite the State's contention, *Dye* and *Carpenter* were decided on constitutional grounds as well as contractual grounds. In discussing the contractual nature of plea agreements, the Ohio Supreme Court noted that, "[b]ecause the defendant's constitutional rights are at stake in the plea process, the concerns underlying a plea agreement differ from and go beyond those of commercial contract law." *Dye* at ¶ 21, citing *Carpenter*, 68 Ohio St.3d at 61, 623 N.E.2d 66.

{¶ 30} Finally, the State is correct that Azeen's no contest plea was made before both *Carpenter* and *Dye* were decided. The State did not argue this point below in either its written response to the motion to dismiss or at the hearing; rather, it contended that *Carpenter* and *Dye* were distinguishable from this case because there was no negotiated plea here and that is the issue upon which we decide this case.[2]

{¶ 31} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

---

[2]This court has previously applied *Carpenter* to a plea that was taken before the case was decided in 1993. *See State v. Browning*, 8th Dist. Cuyahoga No. 77972, 2001 Ohio App. LEXIS 3098 (July 12, 2001) (dismissal of murder indictment upheld because state did not reserve the right in 1992 plea agreement to reindict the defendant if the victim died).

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
EILEEN A. GALLAGHER, J., CONCUR